UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

TIMOTHY SEIGFRIED and
SHANNIE SEIGFRIED,

    Debtors.

No. 14-12381-ta7

TIMOTHY SEIGFRIED and
SHANNIE SEIGFRIED,

    Plaintiffs,

v.

Adv. No. 14-01102-t

W. BYRON BOARD,

    Defendant.

## MEMORANDUM OPINION

Debtors brought this adversary proceeding against defendant W. Byron Board for turnover of $532.71 in prepetition wages that were paid to Board post-petition, as well as attorney fees and punitive damages for willful violation of the automatic stay. On December 19, 2014 the Court entered partial summary judgment against Board, ordering him to turn the funds over to the Debtors and setting a hearing on attorney fees and costs. The hearing has now been held. For the reasons set forth below, the Court will award Debtors a net of $900 in attorney's fees and costs, after deductions taken because of Debtors' failure to deal with Board's lien on the funds in question.

I.  FINDINGS OF FACT[1]

The Court finds that following facts are not in material dispute:[2]

On January 7, 2014 the Santa Fe Magistrate Court (Hon. George Anaya, Jr.) granted Board a $10,127.00 default judgment against Debtors for unpaid rent. Sometime before July 20, 2014, the Magistrate Court issued a writ of garnishment, garnishing Ms. Seigfried's wages.

Debtors filed this Chapter 13 case on August 5, 2014. On or about August 8, 2014, Board received $532.71 from Ms. Seigfried's employer (the "Garnished Funds"), representing net wages for work done between July 20, 2014 and August 2, 2014. This was the only money Board collected from Debtors, leaving a judgment balance of about $9,594.

Debtors sent a letter to Board on August 27, 2014, demanding turnover of the Garnished Funds. Board responded on September 3, 2014, saying he would only turn the funds over "upon an order by the Trustee of the bankruptcy court." Debtors thereupon commenced this adversary proceeding, seeking turnover of the Garnished Funds and a determination that Board willfully violated the automatic stay.

On December 4, 2014, the underlying bankruptcy case, No. 14-12381, was converted to a case under Chapter 7. Debtors received their discharge on March 17, 2015; the case was closed on March 24, 2015.

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

[2] In making these findings, the Court took judicial notice of the docket. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may, sua sponte, take judicial notice of its docket); *In re Mailman Steam Carpet Cleaning Corp.*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

On December 12, 2014, the Court entered a Memorandum Opinion and Judgment partially granting Debtors' Motion for Summary Judgment (the "Summary Judgment Opinion"). In the Summary Judgment Opinion, the Court determined that the Garnished Funds were estate property subject to turnover; that Board willfully violated the automatic stay when he refused to turn over the Garnished Funds; and that Debtors were entitled to attorney's fees and costs. The Court gave Debtors a money judgment in the amount of the Garnished Funds, denied Debtors' request for punitive damages, and reserved the issue of attorney's fees for hearing. Board promptly paid the Garnished Funds over to the Debtors, satisfying the money judgment.

Debtors incurred $1,745.44 in attorney's fees in pursuing recovery of the Garnished Funds. The Debtors incurred an additional $361.12 in fees and costs preparing for and participating in the final hearing on the proper amount of fees.

Debtors never amended their bankruptcy schedules to claim the Garnished Funds as exempt, nor did they seek to avoid Board's lien on the Garnished Funds.

## II. APPLICABLE LAW

A. <u>Attorney Fees under § 362(k)</u>.[3] Where, as here, a court finds that the creditor's stay violation was willful, an award of attorney fees is mandatory. *See, e.g., Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1559 (11th Cir. 1996); *Sternberg v. Johnston,* 595 F.3d 937, 947 (9th Cir. 2010); *In re Wallace,* 2014 WL 1244792, at *7 (9th Cir. BAP 2014); *In re Reynolds,* 2008

---

[3] Unless otherwise indicated, all statutory references are to 11 U.S.C.

WL 373521, at *9 (Bankr. D. Kan. 2008).[4] The fees charged to the stay violator must be reasonable. *See, e.g. In re Escobedo*, 513 B.R. 605, 613 (Bankr. D.N.M. 2014) (finding that the attorney fees awarded were reasonable); *In re Stellato,* 2014 WL 1883978, at *6 (Bankr. D. Colo. 2014) ("The Court will allow reasonable attorney fees and costs as actual damages as mandated by § 363(k)"); *In re McCarthy,* 421 B.R. 550, 568 (Bankr. D. Colo. 2009) (most courts apply a reasonableness standard to attorney fee awards under § 363(k)).

B.  New Mexico Garnishment Law.  "[T]he effect of a writ of garnishment is determined by the laws of the state in which the writ issues." *Becker v. American Bank of Commerce, et al. (In re Town & Country Color Television), Inc.*, 22 B.R. 421, 423 (Bankr. D.N.M. 1982). Upon service of a writ of garnishment, a lien arises that attaches to the garnished funds, creating a priority status senior to any other writ served at a later date. *Behles v. H.O. Ellermeyer, et al. (In re Lucas)*, 107 B.R. 332, 335 (Bankr. D.N.M. 1989).

Once the lien attaches to the garnished funds, the garnishing creditor retains the lien until the funds are paid to the creditor. *Buzzell v. Montgomery Ward & Co. (In re Buzzell)*, 56 B.R. 197, 198 (Bankr. D. Md. 1986). *See also In re Williams*, 460 B.R. 915, 923 (Bankr. N.D. Ga. 2011) (debtor still had an interest in funds subject to garnishment lien on the petition date, so the funds were estate property); *In re Trujillo*, 485 B.R. 238, 244 (Bankr. D. Colo. 2012) (to the

---

[4] The Court emphasizes the mandatory nature of an attorney fee award because it has some sympathy with the dilemma Board confronted. He was in an acrimonious dispute with Debtors (former buyers under a real estate contract who did not pay as agreed), and finally collected a small amount on the default judgment. He was given notice of the bankruptcy filing at about the time he received the Garnished Funds. As a layman, he did not know whether he had to return the Garnished Funds, and he could not very well rely on Debtors' bankruptcy counsel to advise him. It likely would have cost Board more to consult with an attorney than the amount in controversy. The applicable law is not straightforward. Clearly, the better approach would have been to turn over the funds, thereby avoiding the risk of an intentional stay violation. Nevertheless, the Court understands Board's reluctance to turn over the hard-won money without knowing whether he really had to.

-4-

Case 14-01102-t    Doc 27    Filed 05/29/15    Entered 05/29/15 08:33:59 Page 4 of 9

same effect). "Once the garnished wages are paid over to the judgment creditor, the judicial lien is extinguished to that extent, and, to the extent of the satisfaction, there is no longer a judicial lien capable of being avoided." *In re Buzzell*, 56 B.R. at 198.

   C. <u>Post-Petition Wages</u>. Garnishment liens do not encumber wages earned post-petition. *See Local Loan v. Hunt*, 292 U.S. 234, 243 (1934) ("An adjudication of bankruptcy, followed by a discharge, release a debtor from all previously incurred debts . . . and it logically cannot be supposed that the act nevertheless intended to keep such debts alive for the purpose of permitting the creation of an enforceable lien upon a subject not existent when the bankruptcy became effective . . . ."); *In re Baker*, 217 B.R. 609, 610 (Bankr. N.D. Cal. 1998); *In re Schneiderman,* 254 B.R. 296 (Bankr. D.D.C. 2000). In general, the rationale is that the judgment debt is discharged in the bankruptcy case as of the petition date, thereby extinguishing the lien. *In re Baker,* 217 B.R at 610; *In re Schneiderman,* 254 B.R. at 300. *See also In re Jackson*, 260 B.R. 473, 480 (Bankr. E.D. Mo. 2001) (the automatic stay prevents attachment of lien to post-petition wages).

   D. <u>A New Mexico Garnishment Lien is a Judicial Lien</u>. Section 101(36) defines "judicial lien" as a:

> Lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

This definition encompasses garnishments liens. *See Coston v. Coston (In re Coston)*, 65 B.R. 224, 226 (Bankr. D.N.M. 1986) (garnishment liens are judicial liens, not statutory liens); *In re McNeeley,* 51 B.R. 816 (Bankr. D. Utah 1985); *In re Town & Country Color Television,* 22 B.R. at 423. *See also Bryant v. General Elec. Credit Corp.,* 58 B.R. 144, 146 (N.D. Ill. 1986) (Illinois garnishment lien is a judicial lien). *See generally* N.M.S.A § 35-12-1 et seq. Board's lien on the Garnished Funds is a judicial lien, rather than a statutory lien or consensual lien.

Case 14-01102-t    Doc 27    Filed 05/29/15    Entered 05/29/15 08:33:59 Page 5 of 9

E. <u>Avoidance of Judicial Liens</u>. Secured debts, including valid judgment liens, generally survive the bankruptcy *in rem*. S*anders v. Sanders (In re Sanders)*, 39 F.3d 258, 260 (10th Cir. 2000). Nonetheless, bankruptcy law allows a debtor to avoid certain liens that otherwise would "ride through" the bankruptcy. *Id.* For example, debtors may avoid a judicial lien to the extent the lien impairs an exemption, § 522(f). In addition, debtors may in certain circumstances use the trustee's avoiding powers to set aside involuntary transfers of property, and then exempt the property. § 522(h).

1. § 522(f). "To avoid a judicial lien under 522(f)(1), the debtor must prove three elements: (1) that the lien was fixed on an interest of the debtor in property; (2) that the lien impairs an exemption which the debtor would otherwise be entitled; and (3) that the lien is a judicial lien". *In re Conway*, 93 B.R. 731, 733 (Bankr. N.D. Okla. 1988).

2. § 522(h). Alternatively, for a debtor to exercise a trustee's avoidance powers under § 522(h), five conditions must be met: (1) the transfer cannot have been a voluntary transfer of property by the debtor; (2) the debtor cannot have concealed the property; (3) the trustee cannot have attempted to avoid the transfer; (4) the debtor must exercise an avoidance power listed within §522(h); and (5) the transferred property must be of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer pursuant to § 522(g). *DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995); *Smith v. Bank of New York (In re Smith)*, 366 B.R. 149, 153 (Bankr. D. Colo. 2007) (quoting *DeMarah*); *Patton v. State Street Bank (In re Patton)*, 314 B.R. 826, 831 (Bankr. D. Kan. 2004) (listing the conditions). *See also In re Lewis,* 378 B.R. 418 (table), at *5 (10th Cir. BAP 2007) (citing *DeMarah*).

"[W]hen a debtor uses an avoidance power under section 522, [the debtor] is subject to all limitations imposed on a trustee in using that power." 11 U.S.C. § 522(i); *Sandoval v. Century Bank (In re Sandoval)*, 470 B.R. 195, 199 (Bankr. D.N.M. 2012). Section 547(c)(8) prevents a trustee from bringing an action to avoid a preferential transfer of less than $600. § 547(c)(8). A debtor seeking to exercise powers under § 522(h) is subject to the same limitation. *Alarcon v. Commercial Credit Corp. (In re Alarcon)*, 186 B.R. 135, 136 (Bankr. D.N.M. 1995). *See also* Collier on Bankruptcy, ¶ 522.12[2][c] (discussing the $600 limitation on the debtor's § 547 avoidance rights under § 522(h)).

### III. DISCUSSION

Debtors incurred attorney fees of $1,745.44 in this matter.[5] This amount is reasonable. The fees awarded should be reduced, however, because of the Debtors' failure to avoid Board's judicial lien on the Garnished Funds. While the Garnished Funds were owned by the Debtors at all relevant times, and therefore were subject to § 542 turnover, Board had a valid judicial lien on the funds. Debtors never sought to avoid Board's judicial lien. They did not exempt the Garnished Funds on their bankruptcy Schedule C,[6] nor did they seek to avoid the lien under § 522(f). The lien could not be avoided under § 522(h) because the Garnished Funds are less than $600. § 547(c)(8). Debtors should not have demanded turnover of the Garnished Funds unless they were prepared to follow through with an appropriate § 522 lien avoidance motion.

---

[5] The Court does not think it would be appropriate to add $361.12 for the fees Debtors incurred at the final hearing on what fees are awardable in this matter. A line must be drawn somewhere when ruling on fees under § 362(k), or there would be no limit to the fees potentially awardable. The debtor could ask for fees incurred to stop the stay violation, then for proving the amount of such fees and their reasonableness, and then for proving the amount and reasonableness of the fees incurred in the fee hearing, etc. It brings to mind the "*Siphonaptera*" nursery rhyme: "Big fleas have little fleas, upon their back to bite 'em, and little fleas have lesser fleas, and so, ad infinitum."

[6] Debtors elected to use the Federal exemptions, pursuant to § 522(b)(2), and could have used the federal "wild card" exemption of § 522(d)(5).

-7-

Case 14-01102-t    Doc 27    Filed 05/29/15    Entered 05/29/15 08:33:59 Page 7 of 9

*See, e.g. In re Shubert,* 525 B.R. 536, (Bankr. M.D. Ga. 2015) (garnishment lienholder may be entitled to adequate protection unless and until debtor avoids his lien, citing *Bank of Am., N.A. v. Johnson (In re Johnson)*, 479 B.R. 159, 171 (Bankr. N.D. Ga. 2012)).

As stated above, this area of the law is somewhat tricky, and it is not surprising that Debtors' counsel overlooked the existence of Board's lien. Likely, Board never knew he had a lien. Since Board is not an attorney, however, let alone a bankruptcy attorney, the Court thinks the equities are somewhat in his favor.

All things considered, the Court concludes that a deduction of $745.44 is appropriate. This figure combines an estimated cost to amend Schedule C, file a motion to avoid Board's judicial lien, send out a notice, perhaps attend a hearing, and prepare an order, plus some amount to compensate Board for violation of his lien rights.

The Court concludes that it will award Debtors attorney and costs of $1,000.

## IV. CONCLUSION

Debtors incurred in attorney's fees and costs of $1,745.44 in this adversary proceeding. The fees incurred should be offset because of Debtors' failure to address Board's judicial lien rights. The Court will enter a separate money judgment against Board for $1,000.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: May 29, 2015

Copies to:

Ronald E Holmes
112 Edith Blvd NE
Albuquerque, NM 87102


W. Byron Board
7 Los Lomitas Court
Edgewood, NM 87015